## THE NEW YORK.[1]

### THE NORWICH.

### CORNWALL v. THE NEW YORK. SAME v. THE NORWICH.

(*District Court, S. D. New York.* March 24, 1888.)

1. SHIPPING—LIABILITY FOR TORT—INJURIES FROM SWELL OF STEAMER.
    The duty of a passing steamer to guard against the injurious effects of her swell and suction upon the smaller craft in rivers and harbors, has often been enforced in courts of admiralty.
2. SAME—NEGLIGENCE—COSTS—FIFTY-NINTH RULE.
    The steamer New York, going up the Hudson river against the tide, and the steam-boat Norwich, coming down with a tow, passed each other in the channel opposite to where libelants canal-boat lay along the shore taking in cargo. The suction and swell caused the latter to strike the bottom, causing damage, for which this suit was brought. The channel at the point was about 250 to 300 feet wide, and the steamers passed port to port, both moving slowly. The New York was notified before reaching the place of the presence of the canal-boat by the whistles of a steam-tug lying near, and her pilot recognized the fact that he must pass close to her. *Held,* that the Norwich, going slowly with the tide, committed no fault, and the libel against her should be dismissed. *Held,* that it was the duty of the New York, in the situation which her pilot foresaw, to have waited below the landing until the Norwich had passed, so that the New York could have gone further to port; or else to have stopped her wheel entirely while passing libelant's boat; and for her failure to do either she should be held liable for the damage. The Norwich's costs of trial were also imposed on her, as she opposed the libelant's offer to discontinue as to the Norwich, and required that she be retained under the fifty ninth rule.

In Admiralty. Libel for damages.
*Hyland & Zabriskie,* for libelant.
*R. D. Benedict,* for the Norwich.
*C. & A. Van Santvoord,* for the New York.

BROWN, J. On the 16th of August, 1887, the libelant's canal-boat, W. F. O'Rourke, was taking a cargo of ice at a landing by some spiles driven close alongside the dike opposite Mould's ice-house on the east side of the North river, a little below Greenbush, and about a quarter of a mile above Dow's point. At 6 P. M., when her cargo was nearly completed, she was drawing about six feet of water in a depth of about seven

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

feet or a little over. At that time the large passenger steamer New York, of the day line from New York to Albany, passed the landing, and through the suction and swell thereby produced caused the boat to strike the bottom, and the sides of the spiles, so that parts of her bottom were broken. Outside and along-side of the libelant's boat was the steam-tug Robertson, whose pilot, seeing the New York coming up from below, gave several short blasts of his whistle, which were heard by the pilot of the New York when off Dow's point. The pilot of the latter understood that it was a signal that he should be careful in passing the ice-house, and that there was a boat there loading. The landing had been used in the same manner for loading boats with ice for about six years, and was regarded by the ice-men as a specially good place for the purpose. The bottom was of hard sand. The steam-tug Norwich, with a fleet of canal-boats in tow upon a hawser, was at the same time coming down river. The Norwich and New York passed port to port. When abreast of the landing, the available channel-way was only about 250 to 300 feet wide. The evidence shows that the Norwich passed as near to the west side as was safe; that she was going very slow; and that with the ebb-tide, she could not stop, nor safely diminish her speed. The New York passed about midway between the Norwich's tow and the Robertson, leaving some 25 or 30 feet space on each side of her. The evidence does not show any fault on the part of the Norwich. There is no reason to suppose that any part of the suction and swell that caused the damage was attributable to her. Nor was she under any obligation to stop for the New York, if it were not safe for both to pass through the passage at the same time; the obligation to wait would in that case be upon the New York, as the steamer going against the tide. The libel as against the Norwich must, therefore, be dismissed.

On the part of the New York, I am satisfied that when abreast of the ice-house she was going at a very moderate speed. Some half a dozen witnesses on her part say that her speed at the time she passed the landing was not over three or four miles per hour. Her pilot testifies that she was going half slow, i. e., at a speed of about seven miles, before reaching Dow's point, or a little below; and that, seeing the boats at the landing, he then reduced her speed to dead slow, before the Robertson's signals were heard; and that they continued dead slow until after passing the landing. The Norwich, however, had been seen, and whistles exchanged, by which it was understood that the New York was to pass to the right, which would necessarily bring her very close to the libelant's boat at the landing. She was bound, therefore, to take extra precautions against the danger from the suction and swell in passing. The necessity of such precaution was well known. The pilot understood the signals. The New York is the largest day boat upon the river, and her suction and swell among the most dangerous. The river is for the common use of boats, large and small, in all legitimate business. *The Daniel Drew*, 13 Blatchf. 523. The need of precaution and the practice and necessity of guarding against the injurious effects of the heavy swell and suction of large boats upon the smaller craft that have equal rights in the

rivers and harbors, are well understood, and have been often enforced in the decisions of this court and elsewhere. *The Drew*, 22 Fed. Rep. 852; *The Rhode Island*, 24 Fed. Rep. 295; *The Batavier*, 9 Moore, P. C. 286. The evidence does not show that the place of this landing was specially unfit or dangerous, so as to exclude any right of other craft to use it as a landing. Its use for six years without accident, so far as appears, affords a very strong presumption to the contrary. I cannot hold the presence of the canal-boat there to have been an unlawful obstruction, or a fault. I think it was the legal duty, therefore, of the New York, in the situation which her pilot foresaw, either to wait below the landing until the Norwich and her tow had passed, so that she could go farther to the westward abreast of the landing; or, if she did not wish to do that, to stop her wheel while approaching and passing the ice-house landing. Either of these courses was entirely practicable; either would have avoided injury, and neither would have imposed any unreasonable burden upon the New York. Quite a number of the libelant's witnesses estimated the New York's speed at from 11 to 15 miles. I think this estimate is altogether incorrect. I think the New York came to dead slow, as her own witnesses testify; and from the number of revolutions which they give at the various rates of speed, it is probable that she was going from five to six knots. The ebb-tide was slack; the current weak. There was no sufficient reason, in my judgment, for not stopping her wheel for one or two lengths while approaching and passing the landing. She had abundant motion for steerage-way. Nor would there have been any difficulty in maintaining her place and heading below the ice-house, by occasionally stopping her wheel, until the Norwich and her tow had passed by her, so as to allow the New York to go farther to the west, if she preferred that course.

The libelant's boat is without fault, and is, therefore, entitled to be compensated for the damage that she suffered. Loading to the depth of six feet draft within about a foot of the depth of water there, was not in my judgment unreasonable, or any fault on her part. The libelant is therefore entitled to a decree for damages and costs against the New York only. As against the Norwich, the libel must be dismissed, with costs; but as the libelant, at the beginning of the trial, offered to discontinue as to the Norwich, and the New York required that she be retained at her costs, under the fifty-ninth rule in admiralty, the Norwich's costs of trial must be also taxed against the New York.