THE COLUMBIA.

THE ELLEN HERON.

SULLIVAN v. THE COLUMBIA et al.

(District Court, E. D. Pennsylvania. May 9, 1893.)

1. SHIPPING—STEAMERS—INJURIES TO BARGES—SWELLS—EVIDENCE.
The barge E., loaded with brick, in tow with three other barges, going down the Delaware river in the customary course, well eastward of the channel, met the steamer C. at a narrow part of the channel, during ebb tide, going at full speed, and creating swells, the effect of which was to sink the E. by bringing her in contact with the barge in front. *Held*, that the steamer having failed to slow down, as was her custom when meeting these tows on their daily trips, was liable for the injury.

2. SAME—EVIDENCE.
The "swells" and violent commotion of the water, together with the positive testimony of libelant's witnesses, sufficed to overthrow the steamer's contention that she slowed down in time.

3. SAME—CONTRIBUTORY FAULT—EVIDENCE.
The steamer's claim of contributory fault on the part of the barge in being overloaded, in not having a longer hawser, and in the failure of her tug to sound a signal, could not be sustained; it appearing that the load was no more than usual, that a lighter load would have increased the danger from swells, and a longer hawser would have exposed her to other dangers; and, in respect to the signal, that the tug had every reason to believe, being in plain view, that the steamer would slow down as usual.

4. SAME—EVIDENCE.
The fact that another steamer passed down the stream to the eastward of the tow immediately after the C. had passed to westward was

unimportant, the former having taken an unusual course merely because the tow was in front, and having produced little disturbance of the water, in consequence of going down with the current.

In Admiralty. Libel by John J. Sullivan, master of the barge or lighter Ellen Heron, against the steamboat Columbia and Frank G. Edwards, master, for injuries from swells. Decree for libelant.

Henry R. Edmunds, for the Ellen Heron.

Alfred Driver and J. Warren Coulston, for the Columbia.

BUTLER, District Judge. On September 14, 1891, as the libelant, in tow of the tug John Wear, with three other barges, was passing down the Delaware river, laden with brick, (when nearly opposite Jack's island, three-fourths of a mile above Torresdale,) she met the steamboat Columbia, passing up; and in consequence of the commotion produced in the water by the latter vessel, was brought into violent contact with the barge in her front, whereby she was injured and sunk. The tide was ebb, and the customary channel narrow at that point. The tow was made up in the method usual for the voyage on which it was bound; and she was on the customary course down—well eastward of the channel. The Columbia was on the usual course up—one which she traversed daily—near the western side. She very frequently met such tows coming down in that vicinity; and theretofore had always slacked up so as to pass without endangering their safety. In consequence of the narrowness of the channel, and shallowness of the water with the tide down, the Columbia in passing up at full speed would necessarily create great commotion, sending chopping swells eastward, and creating "suction" westward, and thus endanger tows and other small craft passing down. This is not controverted; nor is it denied that she should have slowed down on this occasion as she had previously. She asserts that she did so; and thus is raised the principal question in the case. The evidence respecting it is conflicting; but its weight is clearly against the respondent. Indeed the very unusual commotion made in the water would, of itself, seem to leave no room for doubt. The commotion was made by the Columbia; there was nothing else to make it; and witnesses aboard the tow observed and mentioned this consequence of her passage at the time. It is not suggested that the tow created it, nor is any attempt made to account for its existence otherwise. I have no doubt the Columbia failed to slow down in time. The libelant's witnesses say her speed was not slackened until nearly abreast of them.

The respondent thinks the barges were overloaded, and the tow improperly constructed. The evidence does not sustain either allegation. The libelant was heavily loaded, but not more so than is usual with such vessels, passing between the points involved. And besides a lighter load would have rendered her more liable to mount the forward barge, as she did. The several vessels were carrying their customary daily loads, and but for the extraordinary commotion created in the channel would have encountered no

danger. The loading had no influence on the result. The tow as before suggested was constructed according to uniform custom for the voyage. What is a proper construction for towage upon one water and voyage may not be upon another. Experience has demonstrated that the method adopted here was proper for this voyage, so clearly that a material departure from it might possibly be considered unjustifiable. If the hawsers of the rear barges had been longer, as it is urged they should have been, it is possible the danger of libelant's mounting the barge in front would have been less; but it is probable that she would thus have been exposed to other dangers quite as serious. Being less under control of the tug, she would have been more likely to sheer and collide with other vessels, or to swamp or capsize in such water as she encountered.

Possibly the tug should have sounded some signal as the Columbia approached, but up to the last moment she had every reason to believe that the latter would slow down, as she had previously done. The consequences of her failure to do so could not be appreciated until after she had passed. The consequences were not realized until she was some distance away. She cannot complain of the absence of such signal,—having seen the tow in ample time; and if she could, the libelant would not probably be responsible for the failure to give it. It is urged that the tug should have gone further eastward. But it is at least doubtful whether she could have done so with safety. An attempt to do it in the emergency would probably have increased her danger from the waves, by placing her in a less favorable position to meet their force. She was in her customary and proper course, and had no reason to apprehend danger until too late to avoid it.

The circumstance that the Edwin Forrest passed down eastward of the tow directly after the Columbia passed up, does not seem important. It is not doubted that there was sufficient water where she passed, but it was outside the channel, was an unusual course for vessels bound in that direction, and the Forrest took it only because the tow was in front, and she could not properly pass to westward. Going down with the current she did not materially disturb the water and her passage had no influence in producing the accident.

The proofs do not justify the allegation that the libelant's anchor was hanging over her bow, and thus caused her injury. The opinions of the respondent's witnesses is successfully met, not only by the opinions of others equally reliable, but also by the positive testimony of persons who knew the anchor was elsewhere. A decree must therefore be entered sustaining the libel.