## THE HAVANA.

(District Court, E. D. New York. March 30, 1900.)

SHIPPING—INJURY BY PASSING VESSEL TO VESSEL AT WHARF—NEGLIGENT NAVIGATION.

The Havana, a new steel steamship, of 5,000 tons net, on her trial trip, while passing a wharf on the Delaware river at Philadelphia, both on going out and on coming in, produced so large a wave as to cause libelant's vessel, which was properly moored to the wharf for discharging cargo, to range so violently as to break her lines, although no such effects followed the passing of other vessels at greater speed. *Held*, that such facts raised a presumption of negligent navigation on the part of the Havana, which rendered her liable for the injury.

In Admiralty. Suit to recover damages resulting from the negligent navigation of the steamship Havana.

Convers & Kirlin (Mr. Betts, of counsel), for libelant.
Carter & Ledyard (Mr. Taylor, of counsel), for claimant.

THOMAS, District Judge. The Murcia, classed A1 at Lloyds, 1,694 tons net register, 303 feet long, 41 feet 6 inches beam, began the discharge of her cargo on January 6th at the wharf of the Pennsylvania Salt Company, Philadelphia, on the western shore of the Delaware river, which at that point is less than 2,000 feet wide. She continued moored on the south side of the wharf, her stern being almost flush with the river end of the pier, when, on January 9th, the Havana, a new steel steamship built by Cramps, about 7,000 tons gross, and 5,000 tons net register, 360 feet long, 50 feet beam, of about 17 feet draft, passed down the river on a trial trip, at a

distance of from 500 to 750 feet from the pier line. The wave caused by her passage made the Murcia range forward and backward, which resulted in carrying away a new 2½-inch wire line aft, and a 6-inch Manilla hawser forward. In the afternoon of the same day the Havana, coming up the river, produced so large a wave as to disturb again the Murcia, carrying away all her lines, except a 3½-inch wire and 10-inch Manilla springs. It is for this injury to the lines that the libel has been filed.

Certain facts appear: (1) The wave from the Havana at each time of her passing so disturbed the Murcia as to break certain of her lines. (2) In the afternoon the Havana was seen approaching at a distance, and the crew of the Murcia, consisting of eight or nine persons, were distributed along the lines for the purpose of slacking, or doing such other suitable thing as might best meet any difficulty that should come from a passing vessel. (3) Although the vessel had been in this position for several days, and had been moored in the same way, save as her moorings were slackened to meet the rising tide, no injury had arisen from the traffic in the river, including that of the Wilmington passenger boats, passing up and down, which passed at a rate of 17 or 18 knots, but whose displacement wave was much less than that of the Havana. (4) The passing of the Havana did cause the Murcia to range violently.

From these data it must be concluded that there was some misuse of the waterway by the Havana, provided it appear that the Murcia was properly moored. The evidence on the part of the libelant is to the effect that she was moored suitably and with care. This evidence is not controverted by the claimant to such an extent as to enable the court to find that there was anything unsuitable in the mooring. There were in use for mooring her two spring lines of 10-inch Manilla rope, fastened by several turns about an iron bitt aboard, made fast to two mooring posts on the wharf. On the after end of the ship were two bights, one leading forward and one leading aft from the quarter deck, of 3½-inch steel wire, while on the poop deck there was a 2½-inch wire, and two bights of a 6-inch Manilla rope. Forward there were out a 4 or 4½ inch wire, a 2½-inch wire, and a 6-inch Manilla rope. It is considered that the ship was properly moored, and that her moorings were broken by the action of the Havana. Evidence is given in behalf of the latter vessel tending to show usual speed, and proper distance from the pier lines. It is alleged that her speed had been reduced to slow speed before approaching this part of the river, but the evidence of her pilot is that she was going at half speed, and stemming a tide of about 2½ knots an hour. Under forced draft, the Havana could make 17 knots, while her full speed without forced draft was about 14 knots. Her half speed was not more than 9 or 10 knots. It is not for the court to conjecture why this particular steamer, going at that rate of speed, should have produced this injury, while other vessels, alleged to have been taken past the point at a greater speed, did no injury. It seems sufficient that, upon two trials of passing the place where the Murcia lay, the Havana was conducted in such a manner as on each occasion to part the lines of the Murcia; and this indicates

abnormal results from navigating the river, from which negligence on the part of the Havana may be inferred. The libelant should have a decree, with costs.