DAVIS-COLBY ORE ROASTER CO. v. LACKAWANNA IRON & STEEL CO.

(Circuit Court, M. D. Pennsylvania. February 15, 1904.)

No. 2.

1. PATENTS—INFRINGEMENT—ORE ROASTING FURNACE.

The Greer patents, Nos. 495,883 and 508,542, for an ore roasting furnace, made up of three vertical chambers, each coextensive with the other two, the center one being a roasting chamber to hold the ore, and having openings at several points into each of the others, a combustion chamber on one side, fed from below by fuel gas intermixed with air, and a stack chamber on the other side, the draft created by which draws the flames from the combustion through the roasting chamber, were not anticipated, and are valid. Claims 3 and 8 of patent No. 508,542, covering the combination of the three chambers, and claims 3 and 4 of No. 495,883, and 4 and 5 of No. 508,542, covering a gas chamber in the base of the combustion chamber, having in its top exit openings for gas, and also air ports adjacent, construed, and held infringed.

2. SAME.

The Davis patent, No. 520,481, for buttressing walls extending through the combustion chamber of an ore roasting furnace, to strengthen the wall between that and the roasting chamber, held not infringed if valid, which doubted.

In Equity. Suit for infringement of letters patent Nos. 495,883 and 508,542, for ore roasting furnaces, granted in April and November, 1893, respectively, to R. C. Greer, and No. 520,481, for an improvement in such furnaces granted to O. W. Davis, Jr., May 29, 1894. On final hearing.

Joseph C. Fraley and Henry N. Paul, Jr., for plaintiffs.
Percy B. Hills, for defendants.

ARCHBALD, District Judge. The structure which is the subject of this litigation is what is known as an "ore roaster," designed for expelling the sulphur from iron ore preliminary to smelting. Some

ores have no sulphur, but others are seriously impregnated with it; and, this is particularly true of that obtained from the famous Cornwall banks, near Lebanon, Pa., from which it has been the problem of a hundred years to successfully eliminate it. The complainants are the owners of three patents which are concerned with this subject—two issued to R. C. Greer in April and November, 1893, and one to O. W. Davis, Jr., in May, 1894. Under these patents they undertook to erect at Lebanon in 1895, for the defendant company, who were operating the Colebrook furnaces there, an ore roaster with a capacity of 100 tons daily, guarantied to roast down the sulphur to six-tenths of 1 per cent. This roaster did not work successfully at first, but was made to do so in the end, although there is some question whether this was not the result of favoring it with large-sized ore. In order to overcome, however, existing difficulties, permission was obtained to rebuild certain parts of it, and plans for this purpose were submitted; and whatever lack of success there was, or whatever was the cause of it, the defendant company appear to have been sufficiently satisfied to ask for a proposition looking to the erection of a plant of five roasters at Scranton, Pa., where their principal works then were, in response to which the complainants made suggestions as to further changes which seemed to be desirable. But when it was found that a royalty of $1,200 for each roaster would be required, Mr. Wehrum, the general manager of the defendants, refused to pay it, and broke off the negotiations; declaring he had never seen a patent which he could not get around. Immediately following this, a roaster was put up by the defendants themselves, under the direction of Mr. Wehrum, at Scranton, closely following in general design the plans and suggestions submitted by the complainants; certain changes, however, in matters of detail, being introduced, on which Mr. Wehrum at a later date applied for and obtained two several patents. This roaster was subsequently taken down and removed to Lebanon, where it is now in use. The facts with regard to the original relations of the parties, while given at this length, are not very material, except as they go to show that infringement, if found to exist, is deliberate, and Mr. Wehrum is properly joined as a defendant on account of his individual participation in it.

The roasting furnace which is the subject of the two Greer patents is made up of three vertical chambers, each coextensive with the other two, the center one being designed to hold the ore to be roasted; and having openings at several points into each of the others, the combustion chamber on the one side being fed from below with fuel gas intermixed with air to insure combustion, and the heat and flame being drawn therefrom through the ore by means of the openings provided for the purpose and the draft obtained from the stack chamber on the other; the sulphur being expelled from the ore and carried off in the process. In the first Greer the form of the furnace shown—although none is specified—is circular and the chambers annular; but in the second Greer, as in the defendants' structure, the chambers are rectangular. The latter construction is shown in the following diagrams taken from the second patent; one being an elevation in section; and the other a ground plan:

It will be noted that the several chambers referred to are made high and narrow, and set side by side; the object being to present to the flame from the combustion chamber a thin body of ore, through which it can effectively penetrate; gradually calcining and desulphurizing it as it descends. The Greer invention is in some respects ex-

pressed in its broadest terms in the third and eighth claims of the second patent, as follows:

"(3) An ore roasting or calcining furnace, having a rectangular stack, a rectangular combustion chamber, and a rectangular ore roasting chamber, said roasting chamber being located between said combustion chamber and stack, and communicating on one side at different points in its height with said stack, and on its opposite side at different points in its height with the combustion chamber, said combustion and ore roasting chambers being of substantially the same height, substantially as set forth."

"(8) In an ore roasting and calcining furnace, the combination of the rectangular stack and the rectangular combustion chamber, located at opposite sides of the furnace, with the rectangular roasting chamber between said stack and combustion chamber, said combustion and roasting chambers being of substantially the same height, and said roasting chamber having communication on one side at different points in its height with said combustion chamber, and on its opposite side at different points in its height with said stack, substantially as described."

Infringement of these claims is conceded, but their validity is denied; the defense being that they have been anticipated by other existing devices.

The prior art is unusually free from anything that can properly be called an anticipation. The very primitive arrangement known as the "Gjers Kiln," which is nothing more than a great open-bottom pot, with alternate layers of ore and fuel, was still in use at the time the Greer roaster was patented, and there is very little to fill in the intervening gap. The Knox and Osborn (1870), which is cited as a reference, is a reducing furnace for the treatment of cinnabar and other volatile ores. It has, like the Greer, an ore chamber designed to hold a vertical body of ore, which is "roasted," as it is said, as it passes downwards, by the process of fuel combustion drawn into and through it from a fireplace adjoining, by force of a draft chamber on the opposite side; the metallic vapors expelled from the ore being caught and condensed in appliances beyond. Passing by the fact that this is found in the reducing, and not in the roasting, art, notwithstanding the term applied to the process by the inventor, and that it relates to a volatile metal, such as mercury, which is reduced from its fumes, broadly speaking the same elements which are found in the plaintiffs' structure may be said to be employed. But it is conceded that it does not anticipate the particular claims under discussion, which require the combustion and the stack chambers to be of equal height with the ore chamber, and rectangular in shape; and neither can it, the other claims relied upon, to be presently mentioned, in view of the specific combinations there found. The suggestion of counsel that the operation on the ore is the same, which may well be doubted, loses sight of the fact that we are dealing with a structure, and not a process—a point that is made, per contra, to sustain the Kleeman patent as an anticipation, of which more later.

The Sibley (1886) is a desulphurizing apparatus, designed not only to expel the sulphur from ores, but also to obtain sulphuric acid as a product, by the treatment of iron pyrites. Its portable character, which is a distinct merit claimed for it by the inventor, precludes the idea that it was ever intended for a furnace proper, and there is much in it to suggest that in any character it was commercially use-

less. Its resemblance to the Greer structure consists solely in the fact that it has an ore chamber intermediate between a combustion chamber and the circumscribing annular space beyond, and that the ore is supposed to be subjected to the action of the products of combustion and the oxidizing influence of the air forced into and through it from the combustion chamber. But notwithstanding this three chamber arrangement, the outer is in no sense a stack chamber, as called for in the Greer, with its draft for drawing through the ore the heat and flame from the combustion chamber within, this being effected by an air blast below; neither are there any openings between the different chambers, the inventor, to secure circulation, relying simply on the interstices between the loosely fitting brick partitions, which are not laid up in mortar, and the porosity of the bricks themselves—a very doubtful expedient. This is altogether too dissimilar both in form and purpose to be effectively cited here. Remotely there may have been something of the same idea in the mind of the inventor, but the structural means for carrying it out is widely different. The Valentine (1891) is for an improvement in roasting kilns. Passing by the declared object of the invention, which was to provide a special construction for supporting the stack or chimney above the ore or working chamber, whereby the wall of the latter might be repaired or removed without interference with the chimney, the patent exhibits a circular kiln or furnace, having a central stack chamber and an adjoining ore chamber, with openings between them; but it fails to show anything like a combustion chamber on the other side. Instead of this, it is said that the ore may be heated by fuel fed into the top of the ore chamber, as in the Gjers kiln, or be supplied through flues and fire arches independently piercing the outer walls, to which the gas is conducted by suitable mains. Where flues and fire arches are used, the process, to a certain extent, may be the same as that made use of in the patents in suit, but that by no means identifies the two structures by which it is severally accomplished; and the entire absence in the Valentine kiln of anything to correspond to a combustion chamber is too marked to require discussion.

This brings us to the Kleeman, which is confidently relied on by the defendants, and is the only device that approaches structurally to anything like the one in suit. It is designed for the reducing or smelting of zinc ore, and was patented in England in 1885, in Germany in 1887 (being allowed to lapse there, however, in 1891, for nonpayment of dues), and in the United States in 1889. Like the Knox and Osborn, it is found in the reducing, and not the roasting, art—processes which are said to be metallurgically antithetical. It is not necessary, however, to go into the distinction between them, nor to determine how far, on the strength of it, the perception of the availability of the Kleeman structure for roasting purposes could be regarded as a transfer and adaptation to a nonanalogous art involving the exercise of invention. Instructive examples where this has been held to be the case are to be found in Potts v. Creager, 155 U. S. 606, 15 Sup. Ct. 194, 39 L. Ed. 275, Carnegie Steel Company v. Cambria Iron Company, 185 U. S. 403, 22 Sup. Ct. 698, 46 L. Ed. 968, and Tannage Patent Company v. Zahn, 70 Fed. 1003, 17 C. C. A.

552; but I shall not stop to discuss them. Adhering strictly to the position that equivalency of structure is to control, the lacking feature of the Kleeman is a stack chamber. It has an ore or reducing chamber, and a combustion chamber adjoining, and both are rectangular and vertically coextensive, with openings between to permit the ore in the one to be acted upon by the combustion proceeding from the other. So far there is a similarity, which is not disturbed by the fact that the two chambers are set end to end, instead of side by side, as in the Greer, the result of which is that the ore body is presented to the flame in its thickest direction, instead of in a thin layer; this being a feature which cannot be relied upon under the terms of the patent, however important to the roasting process. But distinctly and positively the third member of the combination, an adjoining stack chamber, is wanting. In its place is an extension of the reducing chamber, through which, in flues or retorts, the zinc fumes are conducted to a tubular recipient beyond, and then by tortuous passages to where they are condensed and reclaimed. Neither structurally, nor as a matter of process, is there any resemblance in this to the stack chamber found in the Greer. Whether the latter be regarded as a draft-producing, or simply as a draft-equalizing, chamber, auxiliary and leading on to the actual chimney or stack at a greater or less distance beyond, the material thing is that the roasting is complete when it is reached, while in the Kleeman the reducing process is continued on through the extension chamber, with its flues and retorts, into still other and ulterior parts. Differing in both function and structure as they do, the two chambers are in no sense equivalent, and there is nothing therefore in this reference on which to predicate an anticipation of what we have here. This disposes of everything that is cited against the claims under discussion, and their novelty and validity being thus established, and infringement conceded, the bill to that extent, at least, must be sustained.

But there are other important elements which it is claimed that the defendants have appropriated. Underneath the combustion chamber, for the purpose of supplying fuel, is a gas chamber, with exits from it and air ports adjoining, to insure combustion; and opening into the combustion chamber at various points above are other inlets for a similar purpose. The object of this arrangement is to secure a suitable supply and admixture of gas and air, and to secure it at the proper place. Bearing as this does on the efficiency of the furnace, the devices employed must be regarded as patentable elements in the combination in which they are found. They are embodied in the third and fourth claims of the first Greer patent, and the fourth and fifth claims of the second, as follows:

Patent 495,883.

"(3) In an ore roasting or calcining furnace, the combination with the stack and an ore roasting chamber of a combustion chamber having communication with said roasting chamber, said combustion chamber having in its base a gas chamber, D, formed in its top with exit openings, d, and also having air ports, e, e', opening into it adjacent to the gas exits, d.

"(4) In an ore roasting or calcining furnace, the combination with the stack and an ore roasting chamber of a combustion chamber having communica-

tion with said roasting chamber, said combustion chamber having in its base a gas chamber, D, formed in its top with exit openings, d, and also having air ports. e and c', opening into it adjacent to the gas exits, d, and holes, c', opening into it at various points, and means for closing said holes, c'."

Patent 508,542.

"(4) In an ore roasting or calcining furnace, the combination with the rectangular stack and rectangular ore roasting chamber of a rectangular combustion chamber having communication with said roasting chamber, said combustion chamber having in its base a gas chamber, D, with gas exits in the top of same, and also having air ports adjacent to said gas exits, substantially as set forth.

"(5) In an ore roasting or calcining furnace, the combination of the rectangular stack, the rectangular ore roasting chamber communicating therewith, and the rectangular combustion chamber communicating with said ore roasting chamber, said ore roasting chamber being located between said combustion chamber and stack, and said combustion chamber having in its base a gas chamber, D, with gas exits in the top of same, and also air inlets opening into it adjacent to said gas exits, and air inlets opening into it at various points. substantially as set forth."

The same references as before are brought forward to invalidate these claims, but with no better success. It is true that, in the Kleeman furnace, air inlets are shown on either side of the gas flue leading up into the combustion chamber from the gas chamber below; and there are openings in the outer wall of the combustion chamber, similarly located to those of the Greer. So far as these particular features of the combination are concerned, this might affect the novelty of the fourth and fifth claims of the second patent, which are in general terms; but not the third and fourth claims of the first, which are narrower, one of the air inlets into the combustion chamber being specifically located between the gas exit and the ore chamber, insuring the presence of a suitable supply of oxygen at this point. But it is not material to insist on any such saving distinction. It is to be remembered that in each of these claims we are dealing with a combination from which it does not in the least detract that certain of its features are not new. We are not concerned, therefore, whether the air inlets in juxtaposition to the gas flue in the Kleeman furnace are duplicated in the claims of the second Greer or not. Novelty is to be predicated upon the combination found in each as a whole, and this includes the three co-ordinate combustion, ore, and stack chambers, as to which, in correlation, the prior art, as we have seen, has nothing to suggest.

As to the infringement of these claims, it seems to me there can be no serious question. So far, in either, as there is a reference by letter to the accompanying diagrams, they are, of course, confined to the specific combination thus shown; but even on that basis the defendants' structure offends. A gas chamber at the base of the combustion chamber is employed, opening up from which into the combustion chamber is a set of exits, and adjacent to them (that is to say, between them and the ore chamber) is a corresponding set of air inlets. Leading in also through the outer wall of the combustion chamber, on opposite side of the gas exits, are passages which have the same relative position as the second air inlet specified in the claims of the first Greer, while similar inlets or passages open into

it at various points in tiers up to the top of the furnace. It is said that these inlets are merely dust holes for cleaning out the furnace, and that the gas from the combustion chamber forces its way out through them to such an extent as to require that they shall be kept permanently closed. But in one of the Wehrum patents, according to which the defendants' structure is supposed to be built, they are described as affording communication with the outer air, and in the other are said to furnish means for inspecting the ores in process of roasting; and, while their use for cleaning purposes is also declared, this additional function does not do away with the others mentioned, which are the same as specified in the patents in suit. It is true that these openings in the defendants' roaster are closed with doors, but this is specified in the fourth claim of the first Greer as to the so-called peepholes, and is shown as to the second air inlet in the other. But the variance, if any, is not material. The openings are none the less ports or inlets, within the terms of the patents, because means are provided for opening and closing them. Nor, in judging of their equivalency, is the particular use which may be made of them to govern. Structure, as has been observed, is what we are especially to look to; and, while the function to which a particular part is devoted is not to be altogether lost sight of, where the form is practically the same as in the case before us, the possible, rather than the accidental, use must decide.

So far the case is clearly with the complainants, but not so as to that which remains. Experience has determined the necessity for strengthening the wall between the ore and the combustion chambers, weakened as it is by the requisite openings, and made thin to facilitate intercommunication, in order to resist the outward thrust of the ore body within. This is accomplished by means of light buttresses set up in the combustion chamber, and the idea, being regarded as a novel one, has been made the subject of a patent to O. W. Davis, Jr., now held by the complainants. It was shown as a feature in the plans for the roaster which the latter were to erect at Scranton, and, having been carried into the structure which was subsequently put up there by the defendant company under the direction of Mr. Wehrum, infringement of this patent is therefore charged. But it is manifest that the mere use of buttresses in the general way suggested is too obvious an engineering expedient to involve invention, and that, where it is claimed to exist, some other novel and beneficial purpose must at the same time be in view. The broad idea by itself is not patentable. The Davis invention, therefore, can only be sustained, if at all, because of some special and peculiar form and advantage which the defendants must have distinctly appropriated in order to infringe. The first claim is relied upon for this, as follows:

"(1) In an ore roasting kiln having inner and outer walls forming a combustion chamber, vertical buttressing walls connecting said inner and outer walls, and forming subdivisions of said chamber, said buttressing walls being formed in openwork or with passages, substantially as described."

It must be recognized that, in what is thus given, the inventor had in mind not only to buttress the chamber, but also to arrange for proper circulation through it, which he was required to do in order not

to interfere with its primary function, but it is with the way that he has undertaken to do this that we are concerned. This in the claim in question consists simply in inserting vertical buttressing walls subdividing the chamber; such walls being formed in openwork, or with passages between them. We have nothing to do here with buttressing secured by a subdivision into horizontal chambers, which is a separate and distinct form, and made the subject of other claims; and the difficulty with that with which we have to deal is its indefiniteness, which neither the specifications nor the diagrams help to relieve. There is nothing to explain what is meant by "openwork walls," and very little as to just what is intended by "passageways." So far as indicated, the latter are simply openings or apertures breaking through the otherwise solid vertical walls of the buttresses, which, being multiplied, produce, as we may assume, the openwork spoken of as an alternative. To enlarge the claim so as to include every character of construction that could in any sense be regarded as openwork would be to treat it with a liberality to which it is not entitled by anything to be found in the patent. It is important to note that no especial function is claimed for the particular form of buttressing adopted, except the very general one of providing for circulation through it, neither the purpose nor effect of which is anywhere indicated. True it is that the inventor has the right to all the advantages that reside in his invention, whether claimed or not; but we are entitled to know something of the benefit intended, in order to judge whether inventive skill has been actually displayed. Taken at its best, therefore, this claim seems to be of doubtful validity.

But without definitely determining that question, I am satisfied that the defendants' structure does not infringe. While the buttressing is effected by vertical walls subdividing the chamber, they are broken up into short sections, each one arched, and staggered with respect to the one above and below it, the result of which is not only to maintain the entire continuity of the combustion chamber, but at the same time to deflect and mix the currents of air and gas passing through it. This is the function expressly claimed for this character of buttressing in the Wehrum patents, and we may therefore assume that it was part of the design of the defendants in adopting it. Standing quite apart as it does, both in form and purpose, from the construction specified in the claim under discussion, it cannot be held to infringe upon it.

As the result of the views so expressed, the bill must be sustained as to the third and fourth claims of the first Greer, and the third, fourth, fifth, and eighth claims of the second, but dismissed as to the Davis on the ground of noninfringement. Let a decree to that effect be drawn, referring the case to a master to state an account.