## THE KAISER WILHELM DER GROSSE.

### (District Court, S. D. New. York. February 10, 1905.)

SHIPPING—NEGLIGENT SPEED OF STEAMSHIP PASSING DOCK—SWELL CAUSING LIGHTER TO DUMP DECK LOAD.

A large steamship leaving New York, which passed near a dock on Staten Island at a speed of not less than 12 miles, so that her swell caused a lighter discharging at the dock to dump a large part of her deck load of mahogany logs, some of which were lost, *held* in fault, and liable for the loss and for damage to the lighter.

In Admiralty.

Avery F. Cushman, for libellant.

Choate, Hanford & Larocque, for claimant.

ADAMS, District Judge. This action was brought by the Commercial Lighterage Company against the steamship Kaiser Wilhelm der Grosse, to recover the damages said to have been caused by the dumping of a part of a cargo of mahogany logs from the deck of the lighter Continental, owned by the libellant, at Williams Dock, Stapleton, Staten Island, owing to the steamship's swells when she was passing out to sea in the morning of the 24th of November, 1903, also to recover some damages done to the lighter in the same way.

It is alleged by the libellant that the steamship was proceeding to sea at a high and negligent rate of speed, making large swells which came to the place the lighter was unloading and caused her to break loose from her moorings and dump a part of her cargo, besides injuring the lighter.

The claimant denies the allegations of the libel to the effect that the steamship was in fault. It avers that the steamship proceeded to sea that morning at an exceedingly low rate of speed that did not and could not possibly cause any damage to the lighter or her cargo, or to any other shipping but that if any damage was sustained by her, or her cargo, the same was solely caused by the carelessness and negligence of those in charge.

A number of interrogatories were annexed to the answer, which elicited the following information from the libellant, viz.: that the lighter contained 203 logs, averaging in weight 2500 pounds; that 126 logs were dumped and 18 lost; that the crew of the lighter consisted of four men, namely, a captain, a mate, a deck hand and an engineer; that 3 logs had been discharged at the time of the accident; that the lighter commenced discharging about 11 A. M.; that the cargo was taken aboard at 6th Street, East River, and towed to Staten Island at 7 A. M. on November 24th, 1903; that the lighter was built in August, 1901, and had been repaired in November, 1903; that the dimensions were 95 feet in length, 31 feet in width and 9½ feet in depth.

It appears from the testimony that the logs were all loaded upon the deck of the lighter in 4 or 5 tiers, altogether 12 to 14 feet high. This method of piling was called "cribbing." The discharging was not commenced until the lighter went to a berth at the upper end of the lumber wharf, facing the bay, and she was then fastened thereto, the starboard side to the wharf, by a spring line aft and a breast line forward. The

deck of the lighter was probably 7 or 8 feet below the top of the wharf, where the logs were to be discharged. The discharging was to be done by means of a boom 60 feet long, stepped into a mast 65 feet high. The boom was 11 feet above the deck. When three logs had been unloaded, the lighter careened to the starboard and many of the logs went overboard, all of which were recovered, excepting 18. The lighter was also damaged somewhat by the catastrophe.

The libelled steamship started to sea that morning about 10:15 o'clock. It is testified on her behalf that she passed quarantine, about a mile below the place in question, about 10:50. Her speed was testified not to have been more than 10 knots at any time that morning before she reached a point opposite the place of the accident and she had made several reductions of speed on account of passing tows.

The whole distance from the starting place of the steamship to the place of the accident was about 7 miles. It took her about 9 minutes to get under way and she had therefore about 36 minutes to cover the distance from the place of starting, which shows a speed of at least 12 nautical miles per hour, without allowing for the reductions she made for other vessels. Her speed, therefore, must have exceeded what was prudent, taking the rights of other vessels into consideration.

There is some discrepancy between the time of the steamship's passing and the time of the accident, which is said to have been after 11 o'clock, but no accurate observations were made of the time on the lighter and such difference cannot overcome the effect of the positive testimony of several witnesses that the accident was the result of swells from this steamship shortly after she passed, though it appears that she was quite a mile away.

The conclusion reached is that the steamship in passing did create dangerous swells which caused the accident. The liability for such damage is well settled. The New York (D. C.) 34 Fed. 757; The Connecticut (D. C.) 45 Fed. 374; The Columbia (D. C.) 55 Fed. 766, affirmed 61 Fed. 220, 9 C. C. A. 455; The New Hampshire (D. C.) 88 Fed. 306; The Havana (D. C.) 100 Fed. 857.

Decree for the libellant, with an order of reference.