THE HENDRICK HUDSON (two cases).

(District Court, S. D. New York. February 28, 1908.)

1. SHIPPING—LIABILITY OF VESSEL FOR CAUSING DANGEROUS SWELL—INJURY TO SMALLER VESSELS.

There is no distinction between harbor and river navigation in respect to the liability of a large vessel for causing dangerous swells by which other lawful and properly handled vessels are injured; nor is it any defense against such liability that the larger vessel was proceeding on her ordinary course and at her customary speed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 345.

Liabilities of vessels for injuries caused by creation of swells, see note to The Asbury Park, 78 C. C. A. 3.]

2. SAME.

While a canal boat was lying at a dock at a narrow and deep place on the Hudson river loading with ore, the large steamer Hudson, running between New York and Albany, passed at a speed of about 18 miles an hour, causing such heavy swells as to dash the canal boat against the pier with such force as to cause a leak. She was then removed to a bulkhead, where she was improperly and insufficiently fastened and left without attention, and during the night she filled and sank on the shelving bottom near the edge of the deep channel. When the Hudson passed on the next day, her swell caused the canal boat to break her lines and slide off into the deep water, and she became a total loss. Another boat, properly moored near by, was not injured. Attempts were made to signal the Hudson as she approached; but they were ineffectual, and not seen. Held, that she was liable for the injury caused on the first day, which was the direct result of the swell, when the canal boat was in a proper place and properly cared for, but that she was not the proxi-

mate cause of the sinking of the boat on the next day, which was due to the negligence and inattention of those in charge, and was not liable for the loss of the boat or her cargo.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 345.]

In Admiralty.

J. J. Macklin and La Roy S. Gove, for M. K. Neville.

Wray & Callaghan, for Hudson Iron Co.

Wm. M. K. Olcott and Harrington Putnam, for the Hendrick Hudson.

HOUGH, District Judge. On August 29, 1907, Neville's canal boat Cosgrove was lying about three-quarters loaded with iron ore at Ft. Montgomery dock on the Hudson river. The river at this point is narrow and very deep, and the Hudson passes daily on her trips between Albany and New York, ordinarily maintaining, while so passing, a speed of about 18 miles an hour. When bound for New York on the afternoon of the day mentioned, her displacement waves created such swells and suction at the dock where the Cosgrove lay as to dash her against the same and cause her to leak. No planks were broken; but at least one was started, and she was considerably shaken. Being about 18 years old, and having her log sides strengthened with king-posts, she probably leaked more easily than a newer vessel would have done. After the Hudson passed some 10 tons more cargo were laden on the Cosgrove, when it was ascertained that she was making water so rapidly that the hand pumps available could not keep her clear. She was thereupon removed from the dock, taken some distance down stream, and fastened to a bulkhead. When so fastened her stern was distant some 8 feet from shore, and her bow angled out into the river. She had three lines out, one at the stern, one near the stern, and one at the bow. The bowline led aft, an improper arrangement, and the whole scheme of mooring was careless and inefficient. During the night the Cosgrove was not pumped, and nearly filled with water, and by the next morning between 11 and 12 o'clock was hard aground, on an underwater shelf of land, and near water approximately 100 feet deep. Shortly before noon of August 30th the Hudson passed on her return trip to Albany, again created swells, and as the result of the suction caused thereby the bow of the Cosgrove tended to go further out in the river. She snapped her bowline, and slid off toward deep water. The water in her then surged forward toward the bow, and put such strain upon the remaining lines that they immediately parted, so that the Cosgrove and her cargo slipped off the shelf aforesaid, and sank in water so deep that both hull and cargo are a total loss.

It is said that both on the 29th and 30th the approaching Hudson was warned by the waving of a red handkerchief to slacken speed. At this point the large steamers keep near the opposite bank of the river, and therefore pass at such a distance that the signal sworn to was not seen, and was in my opinion wholly ineffective and insufficient. There can be no doubt that the injury of the 29th was directly caused by the swells of the Hudson; but it is urged that The Daniel Drew, 13 Blatchf. 523, Fed. Cas. No. 3,565, permits such a vessel as the Hud-

son to pursue her usual speed, about her usual business, and prevents her from being absolutely liable for injuries occasioned to smaller craft by swells or motion caused by her passage through the water.

There is in this case no evidence of reasonable notice or warning to the Hudson of any danger to vessels at the Ft. Montgomery pier, and the Hudson was on both days proceeding at her usual speed and on her usual course. In The New York (D. C.) 34 Fed. 757, Cornwall v. New York (D. C.) 38 Fed. 710, and Mould v. New York (D. C.) 40 Fed. 900, there was proof of warning to the libeled steamboat, and evidence that the steamer endeavored (though unsuccessfully) to prevent the very kind of damage that was anticipated and did occur. The Connecticut (D. C.) 45 Fed. 374, The Monmouth (D. C.) 44 Fed. 809, The New Hampshire (D. C.) 88 Fed. 306, The Majestic, 48 Fed. 730, 1 C. C. A. 78, are all cases of harbor, as distinguished from river, navigation, and no evidence of warning is shown. It is therefore argued that a difference exists between the obligations of vessels navigating the harbor and those navigating the river in respect of displacement waves. I see no just ground for such distinction. The rule is laid down generally in The Majestic, supra. It was there said:

"Nor will it do to say that the Majestic was navigating in the way and at the speed customarily adopted by vessels of her class. If such way and speed caused injury to a seaworthy craft of a kind properly in these waters and properly handled, the custom will have to be modified or the privilege paid for."

There is no intimation here of any difference between river and harbor waters with respect to the obligations of large, swift, and powerful steamers navigating either or both, and it must be held that, whether upon river or in harbor, if a vessel in the ordinary prosecution of her business causes swells or water motion dangerous to other properly handled vessels within the sphere of her displacement effect, the fact of injury thereby to the smaller and weaker, but lawful, craft, gives rise to a cause of action in the latter. In so far as The Daniel Drew, supra, affords any basis for larger claims on the part of the swifter vessel, it has been overruled by The Majestic, supra.

The libelant Neville is therefore entitled to a decree for such damages as he sustained on August 29th.

There is no evidence that the libelant Hudson Iron Company sustained any damages on August 29th. When the Hudson passed on August 30th, there was lying near the stranded Cosgrove another and smaller vessel. She was properly handled and properly made fast, and sustained no injury from the expected swells. The Cosgrove was left to meet this anticipated danger with insufficient lines, improperly made fast, and no crew. Before any recovery can be had for the damages then received, it must be shown that the swells of the Hudson were the proximate cause of the total loss of the Cosgrove and her cargo. It may be admitted under The Majestic, supra, that a "properly handled" small craft may recover; but the Cosgrove was not handled at all. In my judgment she was unnecessarily exposed to danger, and the remarks of the court in Mould v. The New York, supra, at page 902 of 40 Fed. are applicable. Neville will, therefore, not recover for

the ultimate loss of his boat, but only for such an amount as would have been necessary to restore her to service after the damages of August 29th.

The libel of the Hudson Iron Company will be dismissed, without costs.