JAMES SHEWAN & SONS v. NEW ENGLAND NAVIGATION CO.

(Circuit Court of Appeals, Second Circuit.   March 16, 1909.)

No. 172.

SHIPPING (§ 79*)—LIABILITY OF VESSELS FOR TORTS—INJURY TO FLOATING DRY DOCK FROM SWELL—CONTRIBUTORY FAULT.

The owners of a floating dry dock, permanently stationed alongside a pier, where it was held by means of wooden collars passing over heavy spuds driven in the bottom, having room to move up and down with the rising and falling of the tide, which was injured by the excessive swell caused by a passing steamer, *held* not chargeable with contributory fault because of the manner of fastening the dock, where it had been the same for five years, during which time the dock had received no serious injury from passing vessels; and the steamer *held* liable for the entire damages.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 79.*

Liability of vessel for injuries caused by creation of swell, see note to The Asbury Park, 78 C. C. A. 3.]

Appeal from the District Court of the United States for the Eastern District of New York.

For opinion below, see 155 Fed. 860.

Foley & Martin, for libelants.

James T. Kilbreth, for respondent.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The libelants are the owners of a floating dry dock attached to the north side of the pier at the foot of Fourth street, East River. It consists of a pontoon, with bulkheads extending 200 feet on each side; the one on the pier side having four wooden collars or saddles, about 50 feet apart, which run up and down on four 20x20 oak spuds driven 16 feet into the bottom, their upper ends being clamped to the pier. This system allows the dock to slide up and down on the spuds with the tide, or as it is pumped out or filled with water.

On the morning of July 11, 1905, the dock, containing about 3,400 tons of water, was caused to surge to and from the pier, as well as forward and backward, to such an extent that the innermost and outermost spuds were strained, so that they were cracked lengthwise, their saddles parted, and the saddles of the middle spuds loosened. The District Judge rightly found that this extraordinary motion was caused by the displacement waves of the respondent's steamer, William G. Payne, coming down the river on a flood tide at an excessive rate of

speed. But he also found the libelants at fault as to the construction of the dock, in that they should have given the saddles on the innermost and outermost spuds more play; the movement of the dock being greater there than at the middle spuds. Inasmuch as the dock had been used at this same place continuously for five years without sustaining damage of any consequence from passing steamers, we think the libelants cannot be fairly charged with lack of care or skill in its construction.

The decree is reversed, and the court below directed to enter a decree for the libelants for the full amount of the damage sustained, with interest and costs of both courts.