## THE SOUTHERN CROSS.
## THE SOCONY NO. 4.

District Court, E. D. New York. June 1, 1926.

No. 7538.

Shipping ⬤⟳81(1)—Steam tug passing scow tied to dock at speed causing suction, which caused lines to part, held negligent.

Steam tug passing scow tied to dock at speed sufficient to create suction, causing lines of scow to part, *held* negligent, and liable for resulting damages.

In Admiralty. Libel by the C. F. Harms Company, owner of the scow Southern Cross, against the steam tug Socony No. 4. Decree for libelant.

Decree affirmed 21 F.(2d) 76.

William F. Purdy, of New York City, for libelant.

Peter M. Speer, of New York City, for claimant.

CAMPBELL, District Judge. There is considerable conflict in the testimony, but the facts appear to me to be as follows:

After noon on November 4, 1920, the scow Southern Cross, laden with a load of sand waiting to be unloaded, was lying stern out alongside another scow, the May Queen, which was lying stern out laden with gravel, alongside the Sicilian Asphalt Company's dock at the foot of Box street, Newtown creek. The May Queen was properly made fast to the dock with good, although not new, lines, and the Southern Cross was made fast to the May Queen. She could not have put out a stern line to the dock, as it would have endangered the May Queen's cabin to carry a stern line from the Southern Cross to the dock. The dock runs with the creek.

While both scows were so made fast and lying safely, the steam tug Socony No. 4 came into the creek at some speed, with the oil barge Socony No. 124, 235 feet long and 38 feet wide, in tow alongside on the tug's starboard side, from Sparkhill, bound to Kings No. 1, a refinery farther up Newtown creek. The Socony No. 4, with her tow, passed so close to the Southern Cross and the May Queen that, with the depth of water at that point in the creek, she created such a suction that she caused the Southern Cross and May Queen to surge back and forth, as a result of which the lines on the after end of the May Queen parted, and the wind caused both boats, which remained fast to each other, to swing around, and, in order to prevent the bow line of the May Queen from parting, the captain of the Southern Cross slacked off the bow line from the May Queen, got out a bow line from his boat to the dock, and let the boats swing around until they brought up alongside the dock farther up the creek than the place where they were formerly made fast.

The captain, using a line which he carried from the dock forward to the winch of the Southern Cross, made considerable effort, with the assistance of men from the Sicilian Asphalt Company, to pull the boats back to the place alongside the dock where they had been made fast, but without success, and then notified the libelant, and it made efforts to get a tug to assist the Southern Cross; but it was election day, and no tug could be obtained. The libelant then notified the harbor police, and finally succeeded in getting Capt. Stillwagon, of the Newtown Creek Towing Company, to get a special crew and take a tug to the assistance of the Southern Cross; but when he arrived nothing could be done, as the tide had fallen. On the falling tide the Southern Cross grounded and sustained damages.

The testimony of the witnesses produced by the Socony No. 4, that they saw no scows angling out, is negative, and, even if true, does not show the positive testimony of the captain of the Southern Cross to be other than true, because undoubtedly the Socony No. 4 had passed before the boats began to swing around, and the master of the Socony No. 4 was undoubtedly more concerned with the navigation of his boat and what was ahead than with boats he had passed, and the deck-

hand of the Socony No. 4 was a lookout on the bow of the barge No. 124, and undoubtedly was concerned with what was ahead, and not with what they had passed.

The fact that no boats were seen angling out in the stream when the No. 4 came down the creek later in the afternoon with another barge, the Socony No. 57, in tow alongside on the port side of the No. 4, does not contradict the captain of the Southern Cross, because it may well be that the scows had swung around at that time and he was trying to pull them ahead. The No. 4 must have passed with her tow close to the Southern Cross when she came in, because the creek is but about 200 feet wide at that point.

In my opinion, both the captain of the Southern Cross and the master of the Socony No. 4 are in error as to the rate of speed of the No. 4 and her tow, and while she was not going 10 miles an hour, she was going more than 2 miles an hour, and was going fast enough to create, with her deep draft tow, the suction which caused the lines of the May Queen to part. The injuries were received on election day, and there was little activity in the creek, and greater speed could be made.

It is not a question of the precise speed of the No. 4, but whether her speed, when passing as she did the Southern Cross, was sufficient to inflict the damage, and, as I have found, she was guilty of negligence in passing at such speed. The New York (D. C.) 34 F. 757; The New Hampshire (D. C.) 88 F. 306; The Rhode Island (D. C.) 24 F. 295. I find no fault on the part of the libelant or the Southern Cross.

A decree may be entered in favor of libelant, with costs and the usual order of reference.